USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __________________
DATE FILED: 9/1/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOMINICK L. COLABELLA, Individually and as Trustee of the Revocable Trust of Dominick L. Colabella, dated 12/4/17,

Plaintiff,

–against–

CRONUS HOME INSPECTION LLC and MICHAEL COLAVECCHIO,

Defendants.

No. 25–cv–4448

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Dominick L. Colabella, Individually and as Trustee of the Revocable Trust of Dominick L. Colabella, dated 12/4/17 ("Plaintiff") brings this action pursuant to 28 U.S.C. § 1332 against Cronus Home Inspection LLC and Michael Colavecchio (collectively, "Defendants".)

Plaintiff alleges, in relevant part, that Defendants committed gross negligence, breach of fiduciary duty, fraud in the inducement, fraud, and deceptive business practices regarding a home inspection Defendants performed at 14 West Lane, Armonk, New York. Plaintiff specifically claims that Defendants failed to inspect the entire property and report hazards posed by visible overhead electrical lines and power poles situated among trees, resulting in financial damages after Plaintiff purchased the property in reliance on the inspection.

Presently before the Court is Defendants' motion to dismiss the claims in Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[1] (ECF No. 24.) For the reasons set forth below, Defendants' motion is GRANTED in

[1] The Court refers to the parties' motion papers as follows: (1) ECF No. 26 ("Pl. Opp."); (2) ECF No. 24 ("Defs.' Mem."); (3) ECF No. 27 ("Defs.' Reply").

part and DENIED in part.

## FACTUAL BACKGROUND

The following facts are derived from the First Amended Complaint (ECF No. 20) and the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, (ECF No. 26). At this stage, Plaintiff's allegations are taken as true and construed in the light most favorable to Plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### I. The Parties' Prior Dealings

Plaintiff had previously engaged Cronus Home Inspection LLC and Michael Colavecchio for a home inspection prior to February 2023. (FAC ¶ 15.) During that prior engagement, Defendants allegedly inspected the entire property, leading Plaintiff to rely on Defendants for future services. (*Id.* ¶¶ 16–18.) Prior to February 22, 2023, Plaintiff learned that the property located at 14 West Lane, Armonk, New York (the "Premises") was available for acquisition. (*Id.* ¶ 20.) Plaintiff alleges that he requested that Colavecchio conduct an inspection of the entire Premises to assist in negotiating the acquisition, and the parties had a mutual understanding that the entire property would be inspected. (*Id.* ¶¶ 22–24.)

### II. The Inspection Agreement and Report

On February 22, 2023, Plaintiff signed an inspection agreement to retain Defendants. (*Id.* ¶ 25.) The agreement prepared by Defendants incorrectly listed the property as located in Greenwich, Connecticut instead of Armonk, New York. (*Id.* ¶ 26.) Plaintiff claims Defendants purposefully listed the incorrect address to mislead the relevant licensing authority and insurer because Colavecchio was not licensed to conduct home inspections in New York. (*Id.*)

On February 22, 2023, Colavecchio conducted an inspection of the interior and exterior of the Premises. (*Id.* ¶ 33.) Plaintiff alleges that Colavecchio failed to inspect and report on visible overhead power lines and power poles traversing the Premises through hazardous trees, as well as

those visible beyond the property boundary line. (*Id.* ¶¶ 33–35.) Following the inspection, Defendants issued an inspection report (the "Report") that summarized the electrical systems but allegedly omitted any analysis of the overhead power lines or the potential hazard from tree fall. (*Id.* ¶¶ 36, 39–40.) Plaintiff contends that the Report's "Limitations of Electrical System Inspection" section did not exclude an inspection of the source of electrical power or the location of power lines on the Premises. (*Id.* ¶¶ 42–44.) Plaintiff further asserts that the overhead power lines were clearly visible without the need for invasive procedures, and that a reasonably prudent home inspector would have identified the hazard. (Pl. Opp. at 11–12.)

## III. Property Acquisition and Discovery of Defects

Relying upon the Report and Defendants' assurances, Plaintiff negotiated a purchase price and entered into a Residential Contract of Sale for the Premises on March 7, 2023. (FAC ¶¶ 45–47.) Plaintiff subsequently acquired the Premises by deed on July 14, 2023. (*Id.* ¶ 49.) After the closing, Plaintiff claims he discovered that electricity reached the Premises through vulnerable overhead power lines on his property and adjacent land, rather than directly from a public main power source. (*Id.* ¶ 50.) Plaintiff alleges that these power lines and poles were old, rotted, and prone to damage from tree fall during inclement weather, which cause repeated losses of electrical power to the Premises. (*Id.* ¶¶ 58–61.) As a result of the consistent damage to the power lines, Plaintiff asserts that he has incurred and will continue to incur significant costs for repairs and potential underground reconstruction. (*Id.* ¶¶ 62–64.)

## IV. Defendants' Alleged Misrepresentation of Licensing

Plaintiff alleges that Defendants materially omitted and actively concealed their lack of New York licensure given that they are only licensed to conduct home inspections in Connecticut and not in New York. (*Id.* ¶¶ 13, 87–90; Pl. Opp. at 20.) Specifically, Defendants allegedly altered the property address on the Report. (*Id.* ¶¶ 26, 89). Defendants purposefully and fraudulently listed

the inspected property's location as "14 West End Lane, in Greenwich, Connecticut," rather than its true location in Armonk, New York. (*Id.* ¶ 26).

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 28, 2025. (ECF No. 1.) After Defendants sought permission to file a motion to dismiss the Complaint, Plaintiff filed the FAC on September 8, 2025. (ECF No. 20.)

Defendants subsequently served their opening papers to dismiss the FAC on October 10, 2025. (ECF No. 24.) Plaintiff served his opposition papers on December 12, 2025. (ECF No. 26.) On January 7, 2026, Defendants served their reply brief in support of their motion to dismiss. (ECF No. 27.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... and documents that

the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

Defendants move to dismiss the FAC on several grounds. First, as a threshold matter, Defendants argue that Plaintiff's claims are time barred by the six-month contractual statute of limitations established in the parties' inspection agreement. (Defs.' Mem. at 3–4.) Second, Defendants argue that Plaintiff's gross negligence claim fails because Plaintiff has not pleaded facts demonstrating recklessness and has failed to establish a special relationship creating duties independent of the contract. (*Id.* at 4–12.) Third, Defendants assert that the breach of fiduciary duty claim must be dismissed because the FAC contains insufficient factual support to demonstrate the existence of a fiduciary relationship. (*Id.* at 12–13.) Fourth, Defendants contend that Plaintiff's claims for fraud and fraudulent inducement fail to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) and New York law because Plaintiff insufficiently pleads fraudulent intent, fails to allege an actionable misrepresentation, and cannot establish justifiable reliance. (*Id.* at 13–19.) Fifth, Defendants argue that the deceptive business practices claim should be dismissed because Plaintiff has not alleged that Defendants' conduct was "consumer-oriented." (*Id.* at 19–21.) Finally, Defendants assert that all claims against Michael Colavecchio in his individual capacity must be dismissed because Plaintiff has provided insufficient factual support to justify piercing the corporate veil. (*Id.* at 21–24.) The Court addresses each argument in turn.

## I. Plaintiff's Claims are Not Time Barred

As a threshold matter, Defendants argue that Plaintiff's claims are time barred per the six-month limitations period established in the Report which was executed by both Plaintiff and Cronus, LLC. (Defs'. Mem. at 3–4.) Specifically, the Report states:

> If we have any disagreements, Cronus LLC has the right to reinspect. If we are unable to reach a resolution, you agree to submit any and all of your disputes to arbitration pursuant to the rules of the American Arbitration Association ("AAA") within six (6) months of the date of the report provided to you by Cronus, LLC.

(FAC, Exhibit A at 26.)

Under New York law, consumer protection claims are generally subject to a three-year statute of limitations. *See* N.Y. C.P.L.R. § 214(2); *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001). It is well established that parties to a contract may agree to limit the period of time within which an action must be commenced to a period shorter than that provided by the applicable statute of limitations. *See John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 551 (1979); *see also 95 Crescent, LLC v. Certified Restoration Servs., Inc.*, 241 A.D.3d 464, 465 (2d Dep't 2025). However, the intent to shorten the limitations period must be set forth in a "clear and unambiguous manner." *Fitzpatrick & Weller, Inc. v. Miller*, 309 A.D.2d 1273, 1273 (4th Dep't 2003); *see, e.g.*, *Spataro v. Hirschhorn*, 40 A.D.3d 1070, 1071 (2d Dep't 2007) (finding that where the term "dispute" is not defined in the agreement, the provision is unenforceable as a contractual period of limitations because it is not clear and unambiguous).

Moreover, courts have noted that there is a clear distinction between cases governed by a "contractual limitation to the submission of a claim to arbitration" and those governed "by the applicable Statute of Limitations." *United Nations Dev. Corp. v. Norkin Plumbing Co.*, 45 N.Y.2d 358, 363 (1978). Under New York law, an arbitration proceeding is not a common-law "action," and courts strictly refuse to conflate the two concepts. *See* N.Y. C.P.L.R. § 105(b) (defining "action" as a civil judicial proceeding); *see also Son Shipping Co. v. De Fosse & Tanghe*, 199 F.2d

687, 689 (2d Cir. 1952) (noting that arbitration is not a "suit" for statute of limitations purposes). Consequently, a clause limiting the time to seek arbitration cannot be transformed into a general statute of limitations barring judicial action. *Id.*

Here, the dispute clause at issue is an arbitration demand deadline, not a suit-limitation provision. (*See* FAC, Exhibit A at 26.) It speaks exclusively to the timeframe for submitting disputes to the AAA and says nothing about commencing an action or a lawsuit in court. *See* N.Y. C.P.L.R. § 105(b). Furthermore, the arbitration demand is conditional, triggered only after a failed resolution following Cronus LLC's "right to reinspect." This conditional phrasing further defeats any argument that the clause serves as an absolute statute of limitations, as the triggering event itself involves a reinspection.

Notably, neither party has moved to compel arbitration or argued that this dispute properly belongs before an arbitration proceeding. Instead, Defendants seek a dismissal on the merits in this Court by selectively importing a procedural deadline embedded within an arbitration clause they otherwise ignore. (Defs.' Mem. at 3–4.) Defendants cannot convert a deadline for initiating arbitration into a statute of limitations governing judicial proceedings. *See Son Shipping Co.*, 199 F.2d at 689. Therefore, the contractual language fails to clearly and unambiguously override the three-year statutory limitations period for Plaintiff's claims.

Finally, while Defendants do not rely on the clause to argue that arbitration was Plaintiff's exclusive, time-barred remedy, Defendants have nevertheless waived that defense through their own litigation conduct. *See Golden Krust Caribbean Bakery, Inc. v. Sheriff,* No. 25-CV-00713, at *3 (S.D.N.Y. Feb. 19, 2025). Defendants fully briefed the merits of the case under Rule 12(b)(6) rather than moving to compel arbitration, which is a decision that directly cuts against their reading of the contract and constitutes a complete waiver of the arbitral forum and its associated procedural rules. *See id.*

Accordingly, Plaintiff's claims for gross negligence, breach of fiduciary duty, and violations of New York's consumer protection statutes are subject to a three-year statute of limitations, whereas Plaintiff's fraud claims are subject to a six-year statute of limitations and, therefore, are not time-barred.

**II. Gross Negligence**

Plaintiff alleges that Defendants were grossly negligent in conducting the inspection of the Premises. (FAC ¶¶ 65–76.) Defendants argue that this claim fails because the Inspection Agreement explicitly limited the inspection to a basic visual review, and failing to spot power lines obscured by trees does not rise to the level of extreme recklessness required for gross negligence. (Defs.' Mem. at 4–9.)

Under New York law, a claim for gross negligence requires the standard elements of negligence, plus the elevated standard of reckless or intentional behavior. *See Finsel v. Wachala*, 79 A.D.3d 1402, 1404 (2010). Specifically, a plaintiff must plead: (1) the existence of a duty; (2) a breach of that duty; (3) injury as a result thereof; and (4) conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing. *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012). In the context of a home inspection, the plaintiff must demonstrate that the inspector's failure to identify defects fell below the standard of care and proximately caused the buyer's foreseeable damages due to their justifiable reliance on the report when purchasing the home. *See Smith-Hoy v. AMC Prop. Evaluations, Inc.*, 862 N.Y.S.2d 513, 515 (2d Dep't 2008).

Here, Plaintiff has not pleaded facts sufficient to establish the elements of gross negligence because the alleged failure to identify the overhead power lines does not constitute an extreme departure from the standards of ordinary care. As Plaintiff concedes, the power lines were "dangerously located in a heavily forested area" and that the infrastructure "continued on to private

land outside of Plaintiff's control," while the Inspection Agreement expressly restricted Defendants to a "non-invasive, visual inspection." (FAC ¶¶ 44, 56; Pl. Opp. at 10.) Failing to detect an obscured hazard beyond the contractual scope of a standard visual inspection does not demonstrate a failure to exercise even slight care or reckless indifference to Plaintiff's rights. *See, e.g.*, *Seti v. Carnell Assocs., Inc.,* 193 N.Y.S.3d 80, 82 (2d Dep't 2023) (holding that a home inspector was not grossly negligent for failing to identify structural and termite defects that required invasive procedures to discover); *Ryan v. IM Kapco, Inc.*, 930 N.Y.S.2d 627, 629 (2d Dep't 2011) (finding no gross negligence where an inspector failed to discover specific roof damage and inadequate floor support during a standard inspection). The Court finds that the FAC lacks factual allegations showing that Defendants' conduct was malicious, intentional, or completely reckless.

Defendants' motion to dismiss Plaintiff's claim for gross negligence is therefore granted.

**III. Breach of Fiduciary Duty**

Plaintiff alleges that Defendants breached their fiduciary duty to Plaintiff by failing to exercise even slight care regarding the inspection and Report concerning the power lines on the Premises. (FAC ¶¶ 77–84.) Defendants contend that Plaintiff fails to establish the existence of a special relationship, as New York courts routinely hold that a fiduciary duty does not arise merely from an arm's length commercial transaction for home inspection services. (Defs.' Mem. at 12–13.)

A cause of action for breach of fiduciary duty requires showing: (1) a fiduciary duty existed between the parties; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injury. *Kitt v. Inc. Vill. of Babylon*, 244 N.Y.S.3d 146, 149 (2d Dep't 2025). New York courts define a fiduciary relationship as one that is "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions."

*EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19–20 (2005). Courts are reluctant to impose fiduciary obligations where parties have defined their relationship purely by contract. *See id.*

At the outset, Plaintiff has failed to establish that a fiduciary duty existed between the parties because the transaction was a conventional, arm's length commercial agreement for home inspection services. (*See* FAC ¶ 25; Defs.' Mem. at 12–13.) Plaintiff contends that the parties' prior dealings created a special relationship of trust. (FAC ¶ 78; Pl. Opp. at 16–17.) Here, however, Plaintiff does not offer any factual support to demonstrate that a special relationship existed beyond their standard role as a patron of Defendants' home inspection services. (Defs.' Mem. at 10–12); *see also Murphy v. Kuhn*, 90 N.Y.2d 266, 271 (1997) (finding that the record presented only the standard consumer-agent insurance placement relationship, albeit over an extended period of time). Because the allegations in the FAC rely exclusively on a prior business engagement and the conclusory assertion of a "special relationship," Plaintiff cannot elevate a routine contractual obligation into a fiduciary duty. (FAC ¶¶ 78–79; Defs.' Mem. at 11–13.)

Accordingly, Defendants' motion to dismiss Plaintiff's claim for breach of fiduciary duty is granted.

## IV. Fraud in the Inducement

Plaintiff alleges that Defendants engaged in fraud by materially omitting that they were not licensed to conduct home inspections in the State of New York. (FAC ¶¶ 85–95.) Defendants move to dismiss this claim, arguing that Plaintiff fails to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") because the First Amended Complaint insufficiently pleads fraudulent intent, fails to allege an actionable misrepresentation collateral to the contract, and cannot establish justifiable reliance as a matter of law. (Defs.' Mem. at 13–18.)

A fraud in the inducement claim requires: "(1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation

was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." *Cantor v. Villucci*, 181 N.Y.S.3d 644, 646 (2d Dep't 2023).

These fraud claims must also satisfy Rule 9(b)'s particularity requirement, which states that the complaint specify the time, place, speaker, and content of the alleged misrepresentation, explain why it was fraudulent, and allege facts giving rise to a "strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128–30 (2d Cir. 1994).

Turning to the first element and the Rule 9(b) scienter requirement, Plaintiff alleges that Defendants made a material omission by failing to disclose their lack of a New York State home inspector license. (FAC ¶¶ 86–88.) Furthermore, Plaintiff alleges that Defendants affirmatively misrepresented the location of the Premises by purposefully listing the property as "14 West End Lane, in Greenwich, Connecticut" on the Inspection Agreement, rather than its true location in Armonk, New York. (*Id.* ¶ 26.) Plaintiff argues that this alteration was a conscious act of concealment designed to mislead Plaintiff and Defendants' insurers. (Pl. Opp. at 19–20.) While Defendants are correct that pointing to a company's general profit motive is insufficient to plead scienter, a plaintiff may also satisfy Rule 9(b) by identifying circumstances indicating conscious misbehavior by the defendant. (*See* Defs.' Mem. at 14–15); *see also Opternative, Inc. v. JAND, Inc.*, 2019 WL 624853, at *4 (S.D.N.Y. Feb. 13, 2019). Although the FAC does not contain direct evidence of Colavecchio's state of mind, it is reasonable to infer at the pleading stage that a licensed professional operating near a state border would know the territorial limits of his license. Therefore, the specific allegation that Defendants knowingly changed the property's listed state on official inspection documents to circumvent licensing requirements is sufficient to support a strong inference of conscious misbehavior and knowledge of falsity. (FAC ¶ 26.)

Turning to the remaining elements, Plaintiff alleges that this misrepresentation was made to induce him to execute the inspection contract, that he justifiably relied on Defendants as professionals to hold the proper credentials, and that he suffered financial injury by purchasing the home based on their defective inspection. (*Id.* ¶¶ 89–95.) At the motion to dismiss stage, drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude as a matter of law that Plaintiff's reliance was unjustified because this presents a factual question that is inappropriate for resolution under Rule 12(b)(6). *See ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1045 (2015) (holding that the question of what constitutes justifiable reliance is not generally a question to be resolved as a matter of law on a motion to dismiss).

Accepting the allegations as true, Plaintiff has adequately pleaded that he was induced to rely on Defendants' representation of their licensing and suffered downstream damages upon acquiring the Premises. (FAC ¶¶ 92–94.)

Therefore, Defendants' motion to dismiss Plaintiff's claim for fraud in the inducement is denied.

## V. Fraud

Plaintiff alleges that Defendants misled Plaintiff to believe that Defendants were legally authorized to conduct home inspections in the State of New York. (FAC ¶¶ 96–107.) Defendants move to dismiss this claim, arguing that it fails to satisfy the particularity requirements of Rule 9(b) because Plaintiff insufficiently pleads fraudulent intent, fails to allege an actionable misrepresentation, and cannot establish justifiable reliance. (Defs.' Mem. at 13–19.)

Under New York law, the elements of a cause of action for fraud are identical to those required to state a claim for fraud in the inducement, and both claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Cantor v. Villucci*, 181 N.Y.S.3d 644, 646 (2d Dep't 2023).

Here, Plaintiff relies on the exact same factual allegations to support both claims, specifically, that Defendants actively concealed their lack of a New York State home inspector license by intentionally altering the property's address on the Inspection Report from Armonk, New York, to "Greenwich, Connecticut," thereby inducing Plaintiff to justifiably rely on their professional authority to his financial detriment. (FAC ¶¶ 98–107; Defs.' Mem. at 14–19; Pl. Opp. at 21–22.)

For the reasons articulated previously, Plaintiff has pleaded sufficient facts to survive a motion to dismiss. *See, e.g.*, *Kovalenko v. Bhatti Gen. Contracting & Dev., LLC*, 243 N.Y.S.3d 431, 436 (2025) (sustaining a fraud claim where the plaintiff alleged the defendants induced the agreement by misrepresenting their licenses and compliance with New York regulatory requirements). Therefore, Defendants' motion to dismiss Plaintiff's claim for fraud is likewise denied.

## VI. Deceptive Business Practices

Plaintiff alleges that Defendants engaged in deceptive business practices either by omitting that they were not licensed home inspectors in the State of New York, or by holding themselves out to Plaintiff as being licensed to conduct home inspections in the State of New York. (FAC ¶¶ 108–115.) Defendants move to dismiss this claim, arguing that the alleged conduct arises from a single, individualized transaction and thus fails to satisfy the statute's "consumer-oriented" requirement. (Defs.' Mem. at 20–21.)

Section 349 of the New York General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To successfully state a claim under this statute, a plaintiff must plead: (1) that the challenged act or practice was consumer-oriented; (2) that it was misleading in a material way; and (3) that the plaintiff suffered an injury as a result of the deceptive act. *See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24-25 (1995). Thus, the

statute requires not only a materially deceptive act, but also that the deceptive act itself caused the plaintiff's injury.

The consumer-oriented requirement further limits Section 349 to conduct having a broader impact on consumers at large. "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Id.*; *see also Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (2d Cir. 2014) (affirming dismissal of a Section 349 claim where the plaintiff failed to show that the defendant was "engaged in a deceptive practice raising public, consumer-oriented concerns"); *Zawahir v. Berkshire Life Ins. Co.*, 22 A.D.3d 841, 842 (2d Dep't 2005) (dismissing a Section 349 claim where the action "simply involve[d] a private contract dispute," rather than "consumer-oriented, deceptive conduct aimed at the public at large").

Here, the allegations principally concern Defendants' conduct in connection with a single home inspection agreement between Plaintiff and Defendants. Plaintiff alleges that Defendants failed to disclose that they lacked a New York home inspector license and misrepresented the location of the Premises in the parties' Inspection Agreement and Report. (FAC ¶¶ 26, 108-115.) Although Plaintiff characterizes Defendants' conduct as a broader practice of holding themselves out as authorized to perform home inspections in New York, the FAC does not plead sufficient nonconclusory facts showing that Defendants made similar representations to other consumers or otherwise engaged in deceptive conduct having a broader impact on consumers at large. The alleged deception, as pleaded, therefore remains tied to the parties' particular singular transaction. *See Euchner-USA*, 754 F.3d at 143.

Moreover, even if Plaintiff sufficiently pleaded consumer-oriented conduct, the FAC does not plausibly allege that the alleged licensing misrepresentation caused the injury for which Plaintiff seeks recovery under Section 349. Plaintiff alleges that Defendants concealed their lack of a New York license, but his claimed financial injuries stem from Defendants' alleged failure to identify

and report the condition of the overhead power lines and the resulting costs associated with that condition. (FAC ¶¶ 50, 58–64, 108–115.) The FAC does not allege facts establishing that Defendants' lack of licensure, or their alleged misrepresentation concerning that licensure, caused the power-line defects, caused Defendants to overlook those defects, or otherwise independently caused Plaintiff's claimed damages. It is not clear from the pleadings that Plaintiff's injury resulted from the alleged deceptive act itself, as Section 349 requires. *See Oswego*, 85 N.Y.2d at 25.

Accordingly, because Plaintiff has not plausibly alleged either consumer-oriented conduct extending beyond this private contractual dispute or an injury caused by the alleged deceptive act, Defendants' motion to dismiss Plaintiff's deceptive business practices claim is granted.

## VII. Piercing the Corporate Veil

Defendants further argue that Colavecchio "cannot be held liable for the obligations, liabilities, and responsibilities of Cronus Home Inspection, LLC as there is no evidence that he engages in any conduct that would permit Plaintiff to pierce the corporate veil." (Defs.' Mem. at 21.)

Generally, piercing the corporate veil requires a showing that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 141 (1993). If the member is specifically named because he or she personally committed the tortious or wrongful acts alleged in the complaint, not merely because they are the member, a direct liability theory may independently support the claim. *Id.* Specifically, conclusory allegations of domination or control made "upon information and belief" are insufficient. *501 Fifth Ave. Co. LLC v. Alvona LLC*, 973 N.Y.S.2d 137, 138 (2013).

Further, "veil piercing is a fact-laden claim" that is not well suited for resolution upon a motion to dismiss. *Damianos Realty Group, LLC v. Fracchia*, 35 A.D.3d 344, 344 (2006) (quoting *First Bank of Ams. v. Motor Car Funding*, 257 A.D.2d 287, 294 (1999)); *see also Forum Ins. Co. v. Texarkoma Transp. Co.*, 229 A.D.2d 341, 342 (1996). A complaint which seeks to pierce the corporate veil should be upheld unless it can be said that it "is totally devoid of solid, nonconclusory allegations." *International Credit Brokerage Co. v. Agapov*, 249 A.D.2d 77, 78 (1998) (quoting *Sequa Corp. v. Christopher*, 176 A.D.2d 498, 498 (1991)).

Here, Colavecchio exercises complete control of Cronus as the Managing Member and sole partner of the LLC. Additionally, his signature was at the bottom of the Inspection Agreement. (Pl. Opp. at 24–25.) Given the deference to be accorded to pleadings on a motion to dismiss, the Court finds that Plaintiff's complaint, at this stage of the action, raises cognizable causes of action against defendants collectively and Colavecchio individually. *See USA United Holdings, Inc. v. Tse-Peo, Inc.*, No. 9909/08, 2009 N.Y. Slip Op. 50775(U), at *9 (Sup. Ct. Kings Cty. Apr. 23, 2009).

Accordingly, Defendants' motion to dismiss the claims against Colavecchio individually is denied as pre-mature.

## VIII. Leave to Amend

Courts are to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the precise defects of those claims. *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). If a complaint's deficiencies are "substantive" as opposed to "inadequately or inartfully" pled, an opportunity to replead would be "futile" and "should be denied." *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Milanese v. Rust—Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) ("Leave to file an amended complaint shall be freely given when justice so requires, Fed. R. Civ. P. 15(a), and should not be

denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.")

Here, Plaintiff, who is represented by counsel, has already had an opportunity to amend the complaint. Moreover, for the reasons discussed above with respect to Plaintiff's gross negligence and breach of fiduciary duty claims, the deficiencies in those claims are substantive and cannot be cured through further amendment. Accordingly, the Court finds that further amendment would be futile and denies Plaintiff leave to amend the FAC.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the First Amended Complaint is GRANTED in part and DENIED in part.

Plaintiff's gross negligence, breach of fiduciary duty, and deceptive business practices claims are dismissed with prejudice. Defendants' motion regarding the remaining claims for fraud in the inducement and fraud is denied. Defendants are directed to file an answer to the Amended Complaint on or before September 25, 2026.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 24.

SO ORDERED.

Dated: September 01, 2026
White Plains, New York

Nelson S. Román, U.S.D.J.